# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BARRY JAMES CHRISTENSEN, II, | Case No. 3:24-CV-00371-ART-CLB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT AND DENYING DEFENDANTS' MOTION TO STRIKE** |
| v. | |
| FINDLAY ARN, LLC, *et al.,* | |
| Defendants. | [ECF Nos. 51, 53] |

Before the Court is Plaintiff Barry James Christensen, II's ("Christensen") motion for leave to file an amended complaint. (ECF No. 51[1].) Also pending before the Court is Defendant Findlay ARN, LLC, Findlay Automotive Inc., and Justin Findlay's (collectively referred to as "Defendants") motion to strike Christensen's motion for leave to file an amended complaint. (ECF No. 53[2].) For the reasons stated below, Christensen's motion for leave to file an amended complaint, (ECF No. 51), is granted in part and denied in part and Defendants' motion to strike, (ECF No. 53), is denied.

## I.    PROCEDURAL HISTORY

Christensen initiated this suit on August 19, 2024. (ECF No. 2.) Christensen filed a *pro se* complaint against Defendants Findlay ARN LLC ("Audi Reno Tahoe"), Findlay Automotive, and Justin Findlay ("J. Findlay"). (*Id.* at 2-3.) The original complaint in this case alleges the following claims: (1) failure to provide overtime payment under the Fair Labor Standards Act ("FLSA"); (2) unlawful decrease in compensation by employer under NRS 608.100; (3) unlawful demand to receive fee or commission as a condition of giving or continuing employment to work under NRS 613.120; (4) violation of the Family Medical

---

[1]    Defendants responded, (ECF No. 52), and Christensen replied. (ECF No. 54.)

[2]    Christensen responded, (ECF No. 57), and Defendants replied. (ECF No. 59.)

Leave Act ("FMLA"); (5) deceptive trade practices under NRS 598.0915(15), NRS 598.0923(1)(d), and NRS 598.0923(1)(e); (6) breach of the covenant of good faith and fair dealing; and (7) liability for personal injury under NRS 41.130. (*Id.* at 26-68.) All claims are asserted against each Defendant. (*Id.*) Christensen seeks compensatory and punitive damages. (*Id.* at 68-71.)

### A.    Motion to Amend

On October 6, 2025, Christensen filed a motion for leave to amend his complaint. (ECF No. 51.) Christensen seeks leave to file an amended complaint "to correct the pleadings based on information that became available after the arbitration ruling, his Initial Disclosures, and Defendants' subsequent discovery responses." (*Id.*) The amended pleading would:

- Remove Findlay Automotive as a Defendant;

- Add four new Defendants: Findlay Management Group ("FMG"), Clifford J. Findlay ("C. Findlay"), Donna Sue Findlay ("D. Findlay"), and the Cliff Findlay and Donna S. Findlay Family Trust ("Findlay Trust") (collectively referred to as "New Defendants");

- Add one new claim for Constructive Fraud, Constructive Discharge, Unjust Enrichment, and Intentional Infliction of Emotional Distress;

- Remove the following claims: (1) for unlawful demand to receive fee or commission as a condition of giving or continuing employment to work under NRS 613.120 (currently claim 3); (2) deceptive trade practices under NRS 598.0915(15), NRS 598.0923(1)(d), and NRS 598.0923(1)(e) (currently claim 5); and (3) liability for personal injury under NRS 41.130 (currently claim 7).

(ECF No. 51 at 2; *compare* ECF No. 51-1 *with* ECF No. 2.) Christensen argues that discovery provided in this case gives the factual foundation necessary to plead Constructive Fraud as a new claim and "present Constructive Discharge, Unjust Enrichment, and Intentional Infliction of Emotional Distress as standalone causes of action rather than embedded allegations." (*Id.* at 3.) Christensen also states that he seeks to add several defendants because ownership and organization structure of Audi Reno Tahoe was confirmed through Defendants' discovery responses, admissions, and parallel

2

litigation. (*Id.* at 10.)

Defendants opposed, arguing that Christensen's motion to amend is unnecessary, delayed, and in bad faith. (ECF No. 52.) Defendants argue that the ownership of Audi Reno Tahoe has been publicly available information "[a]t all times relevant to Mr. Christensen's employment" and that no new facts have been raised to warrant the addition of the New Defendants at this time. (*Id.* at 2, 7-9.) Defendants further argue that adding the proposed claims would be futile as the claims are legally insufficient. (*Id.* at 10-20.)

Christensen replied, arguing he diligently sought ownership clarification and timely amended after he received new information. (ECF No. 54 at 2.) Christensen admits he had a document from June 2011 disclosing ownership interests in Audi Reno Tahoe but "[b]ecause it was thirteen years old, Plaintiff was unsure if it remained accurate." (ECF No. 54 at 3.) Christensen further argues he is "not altering his legal theories" and that Defendants will not be harmed by the new constructive fraud claim because he could not have brought the claim originally. (*Id.* at 10.)

### B.   Motion to Strike

On October 22, Defendants filed a motion to strike Christensen's motion for leave to amend and his proposed first amended complaint. (ECF No. 53.) Defendants argue that Christensen is "attempting to smear the name of Defendants and additional parties with spurious and unsupportable claims." (*Id.* at 2.) Defendants argue they face harm from these allegations and thus the motion and proposed amended complaint should be stricken. (*Id.* at 5.)

Christensen opposed, arguing that Rule 12(f) only authorizes the Court to strike allegations from a pleading, which does not include his motion to amend. (ECF No. 57 at 12, 17.) Christensen further argues that Defendants are seeking to substitute this Rule 12(f) motion to strike for a Rule 12(b)(6) motion to dismiss. (*Id.* at 18.) Christensen also argues that allegations of wrongdoing are not scandalous or harassing "simply because they reflect poorly on defendants." (*Id.* at 23.)

Defendants replied, arguing that seeking the motion and proposed amended complaint be stricken under Rule 12(f) is proper because the proposed amended complaint is not the operative complaint and therefore not subject to a Rule 12(b)(6) motion. (ECF No. 59 at 3.) Defendants reiterate their argument that the allegations of misconduct and fraud in the proposed complaint "can only be harassing in nature as each claim includes repeated and exaggerated allegations that fail to actually establish any viable legal claim, regardless of Plaintiff's intent or assertions otherwise." (*Id.* at 6.)

## II.    MOTION TO AMEND

### A.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give[] leave [to amend a pleading] when justice so requires." The Ninth Circuit has made clear Rule 15(a) permits liberal application. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  Amendments seeking to add parties are not to be granted as freely as amendments seeking to add claims. *Union Pac. R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). The factors do not weigh equally; rather, prejudice receives the greatest weight. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Eminence Cap.*, LLC, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)). When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature that requires the opposing party to defend against "different legal theories and . . . different facts." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th

Cir. 2006) (internal quotation omitted). Alone, such alteration is not fatal. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

By contrast, futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Futility arises when the amendment is legally insufficient, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), or where the amended complaint would be subject to dismissal, such as when it violates the statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

### B.    Discussion

Christensen seeks to add the New Defendants and add four claims. The Court will first discuss the addition of the New Defendants before analyzing the proposed claims.

#### 1.    Amendment to Add Defendants

The Court will first address whether Christensen should be given leave to amend his complaint to add the New Defendants. The Court will first address the addition of C. Findlay, D. Findlay, and the Findlay Trust before turning to evaluate the addition of the FMG.

#### i.    C. Findlay, D. Findlay, and the Findlay Trust

Turning to proposed defendants C. Findlay, D. Findlay, and the Findlay Trust, Christensen argues he lacked sufficient information to determine the ownership structure of Audi Reno Tahoe and thus now seeks to add these defendants. (ECF No. 51.) Christensen alleges that the Findlay Trust owns part of Audi Reno Tahoe and therefore C. Findlay and D. Findlay are owners through the Findlay Trust. (*Id.*) Defendants argue that ownership of an entity does not make an individual an employer. (ECF No. 52.)

First, the Court finds that there was undue delay in filing the amended complaint to add these defendants. In this case, Christensen seeks to add C. Findlay, D. Findlay, and the Findlay Trust because they are part of Audi Reno Tahoe's ownership structure. (ECF No. 51 at 2.) Christensen states he could not confirm the ownership relationship until August 24, 2025. (ECF No. 54 at 3.) However, Christensen admits that while

preparing his own initial disclosures, he located a document from June 2011 disclosing ownership interest in Audi Reno Tahoe. (*Id.*) Based on these representations, it seems that Christensen had documentation showing the ownership structure of Audi Reno Tahoe long before he filed the initial complaint in this case.

Courts in the Ninth Circuit have held that a plaintiff was not diligent in filing a motion to amend her complaint seven weeks after learning facts in a deposition. *See Edwards v. Conn Appliances, Inc.*, No. 218CV01998APGBNW, 2020 WL 6126276, at *2 (D. Nev. Sept. 30, 2020), report and recommendation adopted, No. 218CV01998APGBNW, 2020 WL 6120151 (D. Nev. Oct. 15, 2020); *Sako v. Wells Fargo Bank, Nat. Ass'n*, No. 14CV1034-GPC JMA, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015). Although the amendment in this case was made six weeks after receiving information in discovery, this information was not actually *new* to Christensen. The Ninth Circuit has repeatedly upheld determinations that a motion to amend was made after undue delay where the plaintiff knew of the facts before filing previous versions of their complaints. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citing *Lockheed Martin Corp. v. Network Solutions,* 194 F.3d 980, 986 (9th Cir.1999)). Thus, the Court finds that Christensen was not diligent in filing a motion to amend and the factor of undue delay weighs against granting leave to amend.

The Court will next address whether the addition of C. Findlay, D. Findlay, and the Findlay Trust would be futile. Christensen argues that because these defendants are part of Audi Reno Tahoe's ownership structure, they share liability as his employers. However, Christensen has not alleged sufficient facts to show that these defendants are "employers" under the law.

Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (citing *Lambert v. Ackerley,* 180 F.3d 997, 1012 (9th Cir.1999) (en banc)) (internal quotation marks and citations omitted). In *Lambert,* the

Ninth Circuit upheld a finding of liability against a chief operating officer and a chief executive officer where the officers had a " 'significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries;[and the responsibility to] maintain [ ] employment records.' " *Lambert,* 180 F.3d at 1001-02, 1012 (quoting the district court's jury instruction).

In his proposed amended complaint, Christensen does not allege with any sort of specificity that the New Defendants had operational control of significant aspects of the business's day-to-day functions, the power to hire and fire employees, or the power to determine salaries. (*See* ECF No. 51-1.) As to C. Findlay, D. Findlay, and the Findlay Trust, Christensen alleges they owned 50% of Audi Reno Tahoe. (ECF No. 51-1 at 4-5.) However, the mere fact that these defendants may have financially benefitted from Audi Reno Tahoe is insufficient to find that they are employers. Based on the proposed amended complaint, it is unclear whether Christensen himself had any interactions – of any kind – with C. Findlay, D. Findlay, or the Findlay Trust. (*See* ECF No. 51-1.) Rather than allege with specificity what actions each new Defendant made in relation to his claims, Christensen refers to Audi Reno Tahoe, FMG, J. Findlay, C. Findlay, D. Findlay, and the Findlay Trust jointly as "Defendant Findlays." (*Id.* at 5.) This method makes it virtually impossible for the Court to determine which party is responsible for what actions. Therefore, in addition to the undue delay, allowing amendment to include these defendants would be futile. *Missouri*, 847 F.3d at 656. As futility "alone can justify the denial of a motion for leave to amend," Christensen's motion for leave to amend is denied to the extent he seeks to add C. Findlay, D. Findlay, and the Findlay Trust. *Nunes*, 375 F.3d at 808.

### ii.    FMG

The Court will now address proposed defendant FMG. Defendants argue that Christensen has "disclosed witnesses and documents clearly identifying FMG" and thus it is "absurd" to delay adding FMG at this point. (ECF No. 52 at 9.) As discussed above,

Christensen had the information in his possession showing the ownership structure of Audi Reno Tahoe before he ever filed this lawsuit. (ECF No. 54 at 3.) Here, the Court again finds that Christensen's motion to amend was unduly delayed. *Chodos*, 292 F.3d at 1003 (citing *Lockheed Martin,* 194 F.3d at 986). While undue delay is not sufficient grounds to deny leave to amend, the factor of undue delay strongly weighs against granting leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

Furthermore, the Court finds that the addition of FMG would require additional discovery and greatly expand the litigation because there will be an increased need to delineate the responsibilities of each party individually in relation to the claims. Christensen argues that additional discovery would be unnecessary because responses from Audi Reno Tahoe and J. Findlay encompass the conduct of FMG. (ECF No. 51 at 25.) This is incorrect. The conduct of Audi Reno Tahoe and J. Findlay cannot be automatically imputed onto FMG. Rather, significant additional discovery would be needed to delineate the actions of each party. This would be significantly prejudicial to the current Defendants and FMG.

The combination of undue delay and prejudice resulting to Defendants provide strong reasons for denying Christensen leave to amend to add FMG. *Jones v. Int'l Collection Servs., Inc.*, No. CV-S-04-0896-KJD-LRL, 2005 WL 8161651, at *1 (D. Nev. May 13, 2005). As amendments seeking to add parties are not to be granted as freely as amendments seeking to add claims, the Court finds that Christensen's motion to amend is denied as to the addition of FMG. *see Union Pac. R.R.*, 950 F.2d at 1432.

### 1.    Amendment to Add Claims

The Court will now turn to the new claims in the proposed amended complaint.

### i.    Constructive Fraud

As to the new claim for constructive fraud, Christensen states this claim "arises from [his] review of his Initial Disclosures and substantiated by Defendants' discovery responses in August 2025." (ECF No. 51 at 2.) Christensen explains that "[i]n preparing

his initial disclosures, [he] located and reviewed records in his possession that had not previously been examined" and that "[a]nalysis of those records confirmed existing claims and substantiated allegations previously embedded within other claims." (*Id.* at 11.)

Constructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential relationship. *Perry v. Jordan,* 900 P.2d 335, 337 (1995). In *Long v. Towne*, the Nevada Supreme Court stated that:

> [c]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence. Constructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential relationship. A "confidential or fiduciary relationship" exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

639 P.2d 528, 529-30 (Nev. 1982) (citations omitted). A confidential relationship "exists when one party gains the confidence of the other and *purports to act or advise with the other's interests in mind.*" *Perry*, 900 P.2d at 338 (emphasis added). A confidential relationship may arise "where one party imposes confidence in the other because of that person's position, *and the other party knows of this confidence.*" *Id.* at 337 (emphasis added). To prove the existence of a special relationship, a party must show that: (1) "the conditions would cause a reasonable person to impart special confidence"; and (2) the trusted party reasonably should have known of that confidence. *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n,* 935 P.2d 1154, 1160 (Nev. 1997) (per curiam).

Claims involving fraud are subject to the heightened pleading standard set forth in Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened standard applies to state law causes of action, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003), and requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A complaint must " 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false' " to satisfy the heightened pleading standard. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafosso, U.S. ex rel. v. Gen.*

1    *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

2         "When an entire complaint, or an entire claim within a complaint, is grounded in

3    fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b),

4    a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107. [T]o state a

5    viable fraud claim, '[t]he complaint must specify such facts as the times, dates, places,

6    benefits received, and other details of the alleged fraudulent activity.' " *Sacramento*

7    *E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1151 (E.D. Cal.

8    2013) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993)). To avoid dismissal

9    under the 9(b) standard, a complaint must also state the "specific content of the false

10   representations as well as the identities of the parties to the misrepresentation.' " *Edwards*

11   *v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods.,*

12   *Inc.*, 862 F.2d at 1393).

13        In this case, Christensen did not allege facts showing that the trusted party

14   reasonably should have known of his confidence in them. *Mackintosh v. Cal. Fed. Sav. &*

15   *Loan Ass'n,* 935 P.2d 1154, 1160 (Nev. 1997) (per curiam). The proposed amended

16   complaint is full of allegations showing that Christensen repeatedly raised concerns about

17   "the fraudulent used car strategy, the resulting financial losses, hostile treatment by GM

18   Parvin (including threats of termination), and mistreatment by Used Car Sales Manager

19   Conidaris" to "Defendant Audi's Management and Defendant Findlay Management

20   Executives." (ECF No. 51-1 at 120.) Christensen alleges he raised these concerns in

21   October 2022, March 2023, April 2023, and September 2023. (*Id.*) On October 10, 2022,

22   Christensen alleges he told Defendant Findlay Management's Human Resources

23   Director that "it sometimes feels like Mr. Parvin (General Manager) and Larry (Used Car

24   Sales Manager) are colluding to make our department (Sales) unprofitable so that people

25   can be fired or make everyone so miserable that they will quit." (*Id.* at 121.) In April 2023,

26   Christensen reiterated his concerns and stated "[t]his store is completely mismanaged"

27   and that Mr. Parvin and Mr. Conidaris were "fighting [him] every step of the way." (*Id.* at

28   122.) However, these claims do not establish that these trusted parties knew of his

confidence in them or that a confidential relationship was created necessary to support this claim. Consequently, Christensen has failed to sufficiently allege a confidential relationship.

As finding that there was a confidential relationship is an essential element of his constructive fraud claim, the proposed amendment is futile because the amendment is legally insufficient. *Missouri*, 847 F.3d at 656. As futility "alone can justify the denial of a motion for leave to amend," Christensen's motion for leave to amend is denied to the extent he seeks to add a claim for constructive fraud. *Nunes*, 375 F.3d at 808.

However, even assuming the proposed amendment would not be futile, the *Desertrain* factors still weigh against amendment. First, as to undue delay, Defendants show that Christensen was fully aware of the facts stated in the complaint related to this claim as this claim. (ECF No. 51 at 25.) Thus, Christensen was in possession of the information necessary to bring a constructive fraud claim from the beginning of the litigation and therefore the motion to amend was unduly delayed. *Chodos*, 292 F.3d at 1003 (citing *Lockheed Martin,* 194 F.3d at 986).

As to the factor of bad faith, the Court finds that it weighs slightly in favor of denying leave to amend. Christensen offers minimal explanation for the delay other than to state he did not understand how the facts were connected until he received discovery from Defendants. However, Christensen did have sufficient information to bring his claim using his own personal knowledge and documents already in his possession. Had Christensen not been representing himself *pro se*, the Court would find that the factor of bad faith weighs strongly in favor of denial. Furthermore, the addition of this claim would change the nature of the litigation and require extensive additional discovery in a case in which there has already been extensive and combative discovery. Thus, the Court finds that adding this claim at this stage of the litigation would be unduly prejudicial to Defendants in that it would vastly expand the scope of this litigation. Consequently, the Court finds that each of the *Desertrain* factors support denial of Christensen's motion to amend as to this claim.

### ii.    Constructive Discharge

Christensen next seeks to amend his complaint to add a claim for constructive discharge. (ECF No. 51.) A constructive discharge has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign. *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir.1984). To show constructive discharge, a plaintiff must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn State Police v. Suders*, 542 US 129, 147 (2004); *see also Munoz*, 2021 WL 9220191, at *3 (citing *Green v. Brennan*, 578 U.S. 547 (2016)). To that end, an employee who resigns without providing their employer a chance to remedy the problem has not been constructively discharged. *Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007).

Where a plaintiff has failed to plead a hostile work environment claim, they have necessarily failed to plead a constructive discharge claim because of the heightened standard for constructive discharge. *See Mayorga v. Diet Ctr. LLC*, No. 23-15807, 2024 WL 1574362, at *2 (9th Cir. Apr. 11, 2024) (because plaintiff had failed to allege a hostile work environment claim, plaintiff could necessarily not establish the higher burden of a constructive discharge claim); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge.").

The Ninth Circuit has held that where a plaintiff was demoted and reassigned to a different state but worked for five months before deciding to retire, and then resigned three months later was not, as a matter of law, the actions of someone who finds his working conditions so intolerable that he felt compelled to resign. *Poland*, 494 F.3d at 1185 (citing *Manatt v. Bank of America,* 339 F.3d 792, 804 (9th Cir. 2003); *Montero v. AGCO Corp.,* 192 F.3d 856, 861 (9th Cir.1999); *Smith v. Bath Iron Works Corp.,* 943 F.2d 164, 167 (1st Cir.1991)).

In this case, Christensen alleges he was employed by Defendant Audi Reno Tahoe and Findlay Management as General Sales Manager from January 1, 2020, through February 10, 2024. (ECF No. 51-1 at 12.) Christensen alleges that "[t]hroughout his tenure as General Sales Manager, Defendants maintained working conditions that were so severe and intolerable that a person in [his] position would have felt compelled to resign." (*Id.* at 113.) Christensen specifically alleges that on June 6, 2023, he signed a new compensation policy but that "[t]he timing was deliberately calculated to exploit [his] overlapping family and financial crises, ensuring maximum coercive pressure and eliminating any realistic alternative to submission." (*Id.* at 116.) However, Christensen alleges he only realized that his $1,500 per month guaranteed salary had been eliminated when he returned from FMLA leave in August 2023. (*Id.* at 117.) Christensen then states he "resigned in February 2024 as a direct result of these intolerable conditions." (*Id.*)

Here, based on the allegations in the proposed amended complaint, Christensen cannot allege a claim for constructive discharge because, as a matter of law, remaining in the position from January 1, 2020, through February 10, 2024, was not the actions of someone who finds his working conditions so intolerable that he felt compelled to resign. *Poland*, 494 F.3d at 1185 (citations omitted). Even if the Court disregards Christensen's general allegations that the conditions were intolerable throughout his entire tenure as General Sales Manager to focus on his allegations following the realization that his compensation was reduced, remaining in the position from August 2023 through February 2024 was not the actions of someone who finds his working conditions so intolerable that he felt compelled to resign. *Id*. Therefore, the proposed amendment to add a claim for constructive discharge is futile because the amendment is legally insufficient. *Missouri*, 847 F.3d at 656. As futility "alone can justify the denial of a motion for leave to amend," Christensen's motion for leave to amend is denied to the extent he seeks to add a claim for constructive discharge. *Nunes*, 375 F.3d at 808.

Even if the Court did not find that adding the constructive discharge claim would be futile, each of the *Desertrain* factors still weigh against amendment. First, as to undue

delay, Christensen states that information gained during discovery allowed him to present this claim as a standalone cause of action rather than embedded allegations and admits that he seeks leave to amend the complaint "[b]ased on additional facts and information provided by Plaintiff's own Initial Disclosures (served April 28, 2025) and corroborated by Defendants' subsequent discovery responses." (ECF No. 51 at 3, 7.) The fact that the "additional facts and information" were included in his own initial disclosures means that Christensen had this information in his possession long before he filed the instant motion to amend. Thus, the Court finds that the motion to amend was unduly delayed. *Chodos*, 292 F.3d at 1003 (citing *Lockheed Martin,* 194 F.3d at 986).

As to the factor of bad faith, the Court finds that it weighs slightly in favor of denying leave to amend. Christensen offers minimal explanation for the delay other than to "corroborate" facts he already knew. Had Christensen not been representing himself *pro se*, the Court would find that the factor of bad faith weighs strongly in favor of denial. Furthermore, the addition of this claim would change the nature of the litigation and require extensive additional discovery in a case in which there has already been extensive and combative discovery. Thus, addition of this claim would be unduly prejudicial to Defendants. Consequently, the Court finds that each of the *Desertrain* factors support denial of Christensen's motion to amend as to this claim.

### iii.    Unjust Enrichment

Christensen also seeks to amend his complaint to add a claim for unjust enrichment. (ECF No. 51.) Under Nevada law, unjust enrichment is an implied contract which "occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *In re Amerco Derivative Litig.,* 252 P.3d 681, 703 (Nev. 2011) (quotation omitted); *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). The elements of unjust enrichment are as follows: (1) "benefit conferred on the defendant by the plaintiff; [(2)] appreciation by the defendant of such benefit, and; [(3)] acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without

payment of the value thereof." *Leasepartners*, 942 P.2d at 187 (quoting *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1274 (1981)). An unjust enrichment claim cannot lie where an express written contract exists "because no agreement can be implied when there is an express agreement." *Id.*

In the proposed amended complaint, Christensen alleges Defendants "breached his employment contract" and "compelled [him] to sign a materially adverse compensation policy." (ECF No. 51-1 at 116.) Thus, Christensen has alleged that there existed an express written contract concerning his compensation for the duration of his employment. Consequently, amendment would be futile as Christensen cannot maintain a claim for unjust enrichment where there was an express agreement. *Leasepartners*, 942 P.2d at 187; *Missouri*, 847 F.3d at 656. Christensen's motion to amend is therefore denied to the he seeks to add a claim for unjust enrichment. *Nunes*, 375 F.3d at 808.

Assuming for argument that adding the unjust enrichment claim would not be futile, the *Desertrain* factors still weigh against amendment. First, as to undue delay, Christensen again claims that information gained during discovery allowed him to present this claim as a standalone cause of action rather than embedded allegations and admits that he seeks leave to amend the complaint "[b]ased on additional facts and information provided by Plaintiff's own Initial Disclosures (served April 28, 2025) and corroborated by Defendants' subsequent discovery responses." (ECF No. 51 at 3, 7.) The fact that the "additional facts and information" were included in his own initial disclosures means that Christensen had this information in his possession long before he filed the instant motion to amend. Thus, the Court finds that the motion to amend was unduly delayed. *Chodos*, 292 F.3d at 1003 (citing *Lockheed Martin,* 194 F.3d at 986).

As to the factor of bad faith, the Court finds that it weighs slightly in favor of denying leave to amend. Christensen offers minimal explanation for the delay other than to "corroborate" facts he already knew. Had Christensen not been representing himself *pro se*, the Court would find that the factor of bad faith weighs strongly in favor of denial. Furthermore, the addition of this claim would change the nature of the litigation and

1   require extensive additional discovery in a case in which there has already been extensive

2   and combative discovery. Thus, addition of this claim would be unduly prejudicial to

3   Defendants. Consequently, the Court finds that all of the *Desertrain* factors support denial

4   of Christensen's motion to amend as to this claim.

5                        **iv.    Intentional Infliction of Emotional Distress**

6           The Court now turns to Christensen's proposed claim for intentional infliction of

7   emotional distress ("IIED"). IIED is a claim that arises under Nevada state law. An IIED

8   claim has four elements: "(1) extreme and outrageous conduct on the part of the

9   defendant; (2) intent to cause emotional distress or reckless disregard for causing

10  emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional

11  distress; and (4) causation." *Blige v. Terry*, 540 P.3d 421, 432 (Nev. 2023) (quoting *Miller*

12  *v. Jones*, 970 P.2d 571, 577 (Nev. 1998)). "Extreme and outrageous conduct is conduct

13  which is 'outside all possible bounds of decency and is regarded as utterly intolerable in

14  a civilized community.'" *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1029 (quoting

15  *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998)). In Nevada, it "is well

16  established that whether specific conduct is extreme and outrageous is a factual

17  determination for the jury." *Mikhalsky v. Tran*, 555 P.3d 285 (Nev. App. 2024); *see Branda*

18  *v. Sanford*, 637 P.2d 1223, 1227 (Nev. 1981) ("[The] jury [is] entitled to determine,

19  considering prevailing circumstances, contemporary attitudes and [the Plaintiff's] own

20  susceptibility, whether the conduct in question constituted extreme outrage.") (internal

21  quotation marks omitted). "General physical or emotional discomfort is insufficient to

22  demonstrate severe emotional distress–a plaintiff must allege such 'serious emotional

23  distress' that it 'results in physical symptoms.' " *Evans v. Hawes*, 718 F. Supp. 3d 1351,

24  1373 (D. Nev. 2024) (quoting *Chowdhry v. NLVH Inc.*, 851 P.2d 459, 482 (Nev. 1993)).

25          In *Shoen v. Amerco, Inc.,* 896 P.2d 469 (Nev. 1995), the Nevada Supreme Court

26  held that verbal threats, frivolous litigation, and the withholding of retirement funds "for

27  the express reason of causing ... extreme financial hardship" constituted potentially

28  extreme and outrageous conduct (in the employment context). In this case, Christensen

alleges that Defendants induced him into signing a compensation package that eliminated any guaranteed income and reduced his overall pay significantly. (ECF No. 51-1 at 145.) Christensen alleges that the timing of when Defendants provided the new compensation package to sign was deliberately calculated to cause emotional distress because it was days before he took leave to care for his children after they had surgery, as well as Christensen's purchase of a home. (*Id.* at 145-47, 156.) Christensen further alleges he was subject to retaliatory discipline and hostile work conditions after raising concerns with alleged fraudulent business practices. (*Id.* at 147-155.) Christensen concludes that the "combination of economic ruin and psychological harm constitutes extreme damages supporting intentional infliction of emotional distress." (*Id.* at 156.)

While Christensen has alleged employment discrimination, his allegations do not suggest the kind of targeted, scorched-earth tactics addressed by *Shoen*. Furthermore, Christensen has not alleged emotional distress "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp*., 819 F.Supp. 905, 911 (D. Nev.1993). Christensen's proposed amendment is therefore futile because it is legally insufficient. *Missouri*, 847 F.3d at 656. As futility "alone can justify the denial of a motion for leave to amend," Christensen's motion for leave to amend is denied to the extent he seeks to add a claim for IIED. *Nunes*, 375 F.3d at 808.

However, in addition to be futile, the Court finds that the remaining *Desertrain* factors weigh against amendment. First, as to undue delay, Christensen states that information gained during discovery allowed him to present this claim as a standalone cause of action rather than embedded allegations and admits that he seeks leave to amend the complaint "[b]ased on additional facts and information provided by Plaintiff's own Initial Disclosures (served April 28, 2025) and corroborated by Defendants' subsequent discovery responses." (ECF No. 51 at 3, 7.) The fact that the "additional facts and information" were included in his own initial disclosures means that Christensen had this information in his possession long before he filed the instant motion to amend. Moreover, the Court rejects the contention that Christensen was not in possession of

information related to his own alleged emotional distress long before discovery commenced in this case or at the time the original complaint was filed. Thus, the Court finds that the motion to amend was unduly delayed. *Chodos*, 292 F.3d at 1003 (citing *Lockheed Martin,* 194 F.3d at 986).

As to the factor of bad faith, the Court finds that it weighs slightly in favor of denying leave to amend. Christensen offers minimal explanation for the delay other than to "corroborate" facts he already knew. Had Christensen not been representing himself *pro se*, the Court would find that the factor of bad faith weighs strongly in favor of denial. Furthermore, the addition of this claim would change the nature of the litigation and require extensive additional discovery in a case in which there has already been extensive and combative discovery. Thus, addition of this claim would be unduly prejudicial to Defendants. Consequently, the Court finds that each of the *Desertrain* factors support denial of Christensen's motion to amend as to this claim.

### 3.    Withdraw Claims and Defendant

Finally, the Court will address the motion for leave to amend to withdraw claims and remove Defendant Findlay Automotive. (ECF No. 51.) Christensen seeks to withdraw the following claims: (1) for unlawful demand to receive fee or commission as a condition of giving or continuing employment to work under NRS 613.120 (currently claim 3); (2) deceptive trade practices under NRS 598.0915(15), NRS 598.0923(1)(d), and NRS 598.0923(1)(e) (currently claim 5); and (3) liability for personal injury under NRS 41.130 (currently claim 7). (ECF No. 51 at 2.) Christensen explains that these claims "do not provide a private right of action in the employer-employee context." (*Id.*) Christensen also seeks to remove Defendant Findlay Automotive because it was erroneously named. (*Id.*) Christensen explains that Findlay Automotive is a Kia dealership in Las Vegas. (ECF No. 54 at 5.)

Defendants do not oppose the withdrawal of these claims or Defendant Findlay Automotive. (*See* ECF No. 52.) Consequently, Christensen's motion to amend to is granted to the extent that Defendant Findlay Automotive and the following claims are

withdrawn: (1) for unlawful demand to receive fee or commission as a condition of giving or continuing employment to work under NRS 613.120; (2) deceptive trade practices under NRS 598.0915(15), NRS 598.0923(1)(d), and NRS 598.0923(1)(e); and (3) liability for personal injury under NRS 41.130.

## III.    MOTION TO STRIKE

### A.    Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure empowers the Court to strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Perrong v. Sperian Energy Corp. et al.*, No. 2:19-cv-00115-RFB-EJY, 2019 WL 8161573, at *1 (D. Nev. Aug. 26, 2019); *Board of Trustees of Glazing Health and Welfare Fund v. Z-Glass*, No. 2:17-cv-01638-JAD-NJK, 2019 WL 10733033, at *1 (D. Nev. Apr. 3, 2019); *Ernest Bock, L.L.C. v. Steelman*, No. 2:19-cv-01065-JAD-EJY, 2021 WL 4750726, at *2 (D. Nev. Sept. 22, 2021). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotations omitted). "Modern litigation is too protracted and expensive for the litigants and the court to expend time and effort pruning or polishing the pleadings." *Russell Road Food & Beverage, LLC v. Galam*, 2013 WL 6684631, at *2 (D. Nev. Dec. 17, 2013) (quoting 5 Wright & Miller, Federal Practice and Procedure, § 1382 (2004)). Motions to strike are disfavored given the potential for use as a delay tactic and given the limited importance of pleadings in federal practice. *E.g., Cardinale v. La Petite Academy, Inc.*, 207 F. Supp. 2d 1158, 1162 (D. Nev. 2002). Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *Roadhouse v. Las Vegas Metropolitan Police Dept.*, 290 F.R.D. 535, 543 (D. Nev. 2013). "Whether to grant a motion to strike lies within the sound discretion of the district court." *Id.*

///

///

## B.    Discussion

Defendants argue that Christensen's motion to amend and proposed amended complaint should be stricken because Christensen is "attempting to smear the name of Defendants and additional parties with spurious and unsupportable claims." (ECF No. 53. at 2.) Defendants argue they face harm from these allegations and thus the motion and proposed amended complaint should be stricken. (*Id.* at 5.)

The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotations omitted). In this case, because the Court has already determined that Christensen may not amend his complaint to add the New Defendants or the four proposed additional claims, the Court finds that neither the motion for leave to amend nor proposed amended complaint should be stricken. The motion for leave to amend is granted solely to remove claims identified as insufficient. As the allegedly harassing and scandalous allegations will not be allowed to proceed, there is no need for the Court "to expend time and effort pruning or polishing the pleadings." *Russell Road Food & Beverage,* 2013 WL 6684631, at *2 (citations omitted). Thus, Defendants' motion to strike the motion to amend and the proposed amended complaint is denied.

## III.    CONCLUSION

**IT IS THEREFORE ORDERED** that Christensen's motion to amend, (ECF No. 51), is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Christensen's motion to amend is **GRANTED** as to the withdrawal of Defendant Findlay Automotive and the following claims: (1) for unlawful demand to receive fee or commission as a condition of giving or continuing employment to work under NRS 613.120; (2) deceptive trade practices under NRS 598.0915(15), NRS 598.0923(1)(d), and NRS 598.0923(1)(e); and (3) liability for personal injury under NRS 41.130;

- Christensen's motion to amend is **DENIED** as to the addition of Defendants FMG, C. Findlay, D. Findlay, and the Findlay Trust;

- Christensen's motion to amend is **DENIED** as to the addition of claims for Constructive Fraud, Constructive Discharge, Unjust Enrichment, and Intentional Infliction of Emotional Distress.

**IT IS FURTHER ORDERED** that Defendants' motion to strike the motion to amend and the proposed amended pleading, (ECF No. 53), is **DENIED**.

**IT IS SO ORDERED**.

**DATED**:  December 31, 2025  .

_____

**UNITED STATES MAGISTRATE JUDGE**